2018 PA Super 212

| | | |
|---|---|---|
| DANIEL T. MORGAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHERI A. MORGAN | : | |
| | : | |
| Appellant | : | No. 1770 MDA 2016 |

Appeal from the Order Entered September 27, 2016
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2007-1502

| | | |
|---|---|---|
| DANIEL T. MORGAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SHERI A. MORGAN | : | No. 1841 MDA 2016 |

Appeal from the Order Entered September 27, 2016
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2007-1502

| | | |
|---|---|---|
| DANIEL T. MORGAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SHERI A. MORGAN | : | No. 128 MDA 2017 |

Appeal from the Order Entered January 12, 2017
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2007-1502

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER*, J.

_____

*   Retired Senior Judge assigned to the Superior Court.

OPINION BY DUBOW, J.:                    **FILED JULY 20, 2018**

In these consolidated cross appeals, Sheri A. Morgan ("Wife") and Daniel T. Morgan ("Husband") both appeal from the September 27, 2016 Order, which, *inter alia*, reduced Husband's alimony obligation. Husband also appeals the January 12, 2017 Order that denied his Motion to Strike the September 27, 2016 Order. After careful review, we vacate the September 27, 2016 Order and remand this case with instructions.

**PROCEDURAL AND FACTUAL HISTORY**

Husband and Wife were married on May 18, 1984, and have three adult children; the youngest suffers from autism and requires supervision and care. During the marriage, Husband earned various advanced degrees, including a Law Degree, Masters in Business Administration, Masters of Laws in Taxation, and a Certified Public Accountant certification; Wife earned her Bachelors of Science in Nursing. At the time of the parties' separation, Husband earned a salary of $144,000.

On March 18, 2003, the parties entered into a Marital Settlement Agreement ("Agreement") on the record, which provided that Husband would pay Wife $5,000 per month in alimony until at least June 30, 2007. After July 1, 2007, either party could petition the Court to modify the amount of alimony, restricted only by the provision that the trial court could not reduce alimony below $1,000 until July 1, 2007 or later.

- 2 -

On March 20, 2003, the parties were divorced pursuant to a Judgment of Divorce entered in Montgomery County, Maryland, which incorporated, but did not merge, the parties' Agreement.

On May 3, 2007, Husband filed a certified copy of the Divorce Decree in Franklin County, PA. On May 4, 2007, Husband filed a Petition to Modify Alimony to $1000 per month. Wife filed a cross-petition to increase alimony above $5000 per month.

On December 5, 2007, the trial court granted Husband's Petition and reduced Husband's alimony obligation to $1000 per month. Wife timely appealed. On appeal, this Court vacated a portion of the Order, remanded the case, and instructed the trial court to require Husband to demonstrate "a substantial change in circumstances that justify reducing the award" and then analyze the requisite factors set forth at 23 Pa.C.S. § 3701(b)(1)-(17). *Morgan v. Morgan*, No. 50 MDA 2008, unpublished memorandum at 11 (Pa. Super. filed November 13, 2008)("MORGAN I").

On January 14, 2011, after a hearing, the trial court issued an Order again granting Husband's Petition to Modify Alimony and reducing alimony to $1000 per month retroactive to July 1, 2007. ("January 2011 Hearing"). Wife timely appealed the trial court's order.

While Wife's appeal was pending, Wife discovered that at the January 2011 Hearing, Husband produced to the court false documentation and testimony regarding his income, including two sets of false tax returns. Wife filed in this Court a Motion to Supplement the Record and a Motion for

- 3 -

Immediate Interim Relief. Superior Court denied these motions and affirmed the decision of the trial court. ***See Morgan v. Morgan***, 40 A.3d 194 (Pa. Super. 2011) (unpublished memorandum)("MORGAN II").

On January 24, 2012, Wife filed with the trial court a Petition to Modify Alimony based on Husband's fraud. At the hearing, the parties stipulated that Husband's income was, in fact, higher than Husband had presented at the January 2011 Hearing.[1] The parties also stipulated that Wife's 2015 annual income was $43,200.

The parties further stipulated that 1) the hourly rates that Wife's attorneys charged were reasonable; 2) Husband would not challenge line-item charges from Wife's attorneys; and 3) it was not necessary for Wife to call an expert witness to testify as to the services provided.

Although the trial court acknowledged that Husband willfully presented false evidence of his income at the January 2011 Hearing and characterized Husband's conduct as "despicable," the trial court determined that it was bound by the factors listed in 23 Pa.C.S. § 3701 and issued the same Order that it had issued at the January 2011 Hearing. See Order, dated 9/27/16. Husband's alimony obligation remained at $1000 per month from July 1, 2011, through June 30, 2022.

_____

[1] In particular, the parties stipulated that Husband's income was as follows: $415,000 in 2007; $384,000 in 2008; $340,096 in 2009; $528,984 in 2010; $474,572 in 2011; $452,141 in 2012; $588,996 in 2013; $584,051 in 2014; and approximately $663,324 for 2015.

The parties had stipulated that attorney's fees that Wife incurred were reasonable. The trial court, however, only required Husband to reimburse Wife for 75% of those fees. Moreover, the trial court only required Husband to reimburse Wife for those fees Wife incurred from the date she discovered Husband's fraud, not from the date he committed the fraud.

Wife filed a timely Notice of Appeal. Wife and the trial court complied with Pa.R.A.P 1925. Husband filed a timely cross appeal, but failed to serve the appeal on the trial court. Consequently, the trial court did not order Husband to file a Pa.R.A.P. 1925(b) Statement.[2]

On January 11, 2017, Husband filed a Motion to Strike the September 27, 2016 Order. On January 12, 2017, the trial court denied Husband's Motion to Strike. Husband timely appealed. Both Husband and the trial court complied with Pa.R.A.P. 1925. Upon Motion from Husband, this Court consolidated the above-captioned appeals.

**ISSUES RAISED ON APPEAL**

_____

[2] Pa.R.A.P. 902 states, in pertinent part, "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken." We decline to remand the case due to Husband's failure to serve a copy of the Notice of Appeal on the trial court.

**Wife's Issues**

Wife raises the following issues on appeal:

I.  Did the trial court abuse its discretion and err as a matter of law in concluding that an inequitable result would occur if it applied the doctrine of unclean hands to preclude analysis of the alimony factors, despite the trial court finding that the doctrine was applicable to the case and that [Husband]'s fraudulent conduct was within the purview of the doctrine?

II. Did the trial court abuse its discretion and err as a matter of law in determining that the amount of counsel fees to be considered for reimbursement were only the fees accumulated subsequent to the discovery of [Husband]'s fraud, therefore denying any consideration of the counsel fees accumulated while [Husband] perpetrated his fraud, despite determining that [Husband] was not entitled to a reduction in his alimony for the same period due to his fraud, and in arbitrarily awarding only 75% of the counsel fees incurred subsequent to the discovery of [Husband]'s fraud?

III. Did the trial court abuse its discretion and err as a matter of law where it correctly recognized the applicability of the *falsus in uno, falsus in omnibus* doctrine where [Husband]'s fraud was material to the alimony modification determination, but declined to apply the doctrine to any of the likely and necessarily fraudulent testimony and production of [Husband], and in finding any of [Husband]'s testimony credible where in every instance where there was a way to check the veracity of [Husband]'s testimony, it was proven to be false?

IV. Did the trial court abuse its discretion and err as a matter of law in concluding that despite [Husband]'s fraud, [Husband] established a substantial and continuing change to meet the threshold requirement for alimony modification?

V.  Did the trial court abuse its discretion and err as a matter of law in finding, after reanalysis of the alimony factors in light of [Husband]'s fraud, [Husband] to be entitled to any reduction to his alimony obligation, let alone a reduction in

his alimony obligation after July of 2011, where [Husband]'s fraud was committed from the outset of the case, [Husband] perpetuated his fraud through the proceedings well after July of 2011, and where the trial court's Opinion of January 14, 2011 was premised upon findings of fact that were determined by the trial court based on fraudulent testimony and production from [Husband] which the trial court failed to fully recognize and address in its reanalysis of the factors in its Opinion and Order of September 27, 2016?

VI. Did the trial court abuse its discretion and err as a matter of law in determining that [Husband]'s fraudulent testimony and fraudulent production was not arbitrary, vexatious, or in bad faith?

Wife's Brief at 5-7 (reordered for ease of disposition; some capitalization omitted).

## Husband's Issues

1. A court cannot alter a contract, and a judgment without subject matter jurisdiction is void. The trial court has determined, three times, that the parties contracted, in March 2003, that alimony would end in July 2007; nonetheless, the trial court has altered the contract by adding four years of alimony. Could the court alter the contract?

2. A judgment without subject matter jurisdiction is void. The trial court altered the parties' alimony contract based on Domestic Relations Code section 3701(b), which applies when alimony is awarded by a court. Did such statute provide the trial court with subject matter jurisdiction?

3. Relitigation of a final judgment is precluded, and a judgment without subject matter jurisdiction is void. The trial court allowed its final judgment to be relitigated, resulting in the judgment on appeal. Could the final judgment be relitigated?

4. Jurisdiction of appeals from trial court orders lies with the Superior Court, exclusively, and a judgment without subject matter jurisdiction is void. After the Superior Court affirmed the trial court's final order, the trial court altered the

affirmance. Did the trial court have jurisdiction to alter the affirmance?

5. A trial court has a maximum of 30 days to modify an order, but cannot do so after the order has been appealed, and a judgment without subject matter jurisdiction is void. After appeal of the trial court's (final) order, the trial court modified such order by entering the order on appeal. Was such modification permissible?

6. Orders were entered based on a judgment without subject matter jurisdiction. Were such orders valid?

Husband's Brief at 4-5.

**LEGAL ANALYSIS – WIFE'S ISSUES**

### The Trial Court Abused its Discretion When it Failed to Apply the Doctrine of Unclean Hands

In her first issue, Wife avers that the trial court abused its discretion when it failed to apply the doctrine of unclean hands after determining that its application would be inequitable, despite finding that Husband's fraudulent conduct was within the purview of the doctrine. Wife's Brief at 21. Wife asserts that Husband committed intentional and premeditated fraud upon the trial court for the last ten years and "in every instance where there was a way to check the truth or falsity of [Husband]'s testimony, it was proven to be false." *Id.* at 26, 28. Wife argues that the application of the doctrine of unclean hands is the only equitable recourse, and the trial court abused its discretion when it failed to apply the doctrine, vacate its decision to grant Husband's Petition to Modify, and determine that the doctrine completely bars Husband's request for the reduction of his alimony obligation. *Id.* at 23, 27. We agree.

We review spousal support cases for an abuse of discretion. ***Dudas v. Pietrzykowski***, 849 A.2d 582, 585 (Pa. 2004). We must determine whether the trial court "has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record." ***Id.*** (citation omitted).

As an initial matter, we conclude that the trial court properly determined that Husband's fraudulent production and testimony is "within the purview of the unclean hands doctrine." Trial Court Opinion and Order, dated 9/27/16, at 11. The doctrine of unclean hands generally operates only to deny equitable, and not legal, remedies. ***Universal Builders, Inc. v. Moon Motor Lodge, Inc.***, 244 A.2d 10, 14 (Pa. 1968). This Court has concluded that "[a] marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1258 (Pa. Super. 2005).

The Divorce Code specifically states that **"[i]n all matrimonial causes, the court shall have full equity power and jurisdiction** and may issue injunctions or other orders which are necessary to protect the interests of the parties **or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require**." 23 Pa.C.S. § 3323(f) (emphasis added).

We first consider whether the trial court abused its discretion when it determined that application of the doctrine of unclean hands to this case would be inequitable and refused to apply it. It is well settled that a party "who comes into a court of equity must come with clean hands. The doctrine of unclean hands requires that one seeking equity act fairly and **without fraud or deceit as to the controversy at issue**." *Lee v. Lee*, 978 A.2d 380, 387 (Pa. Super. 2009) (internal citations omitted)(emphasis added). The doctrine "is derived from the unwillingness of a court to give relief to a suitor who has so conducted himself as to shock the moral sensibilities of the judge[.]" *In re Estate of Pedrick*, 482 A.2d 215, 222 (Pa. 1984). "A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Terraciano v. Com., Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237 (Pa. 2000). Finally, the doctrine of unclean hands "gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant" and in exercising this discretion, the equity court is free to refuse to apply the doctrine if consideration of the record as a whole convinces the court that application of the doctrine will cause an inequitable result. *Shapiro v. Shapiro*, 204 A.2d 266, 268 (Pa. 1964) (citations omitted).

The facts of this case fall squarely within the doctrine of unclean hands. Husband's fraudulent conduct took place from the inception of this

alimony modification case in May 2007 and through the January 2011 Hearing. Husband's fraud included producing to the court two different sets of false tax returns, false financial documents, and a false mortgage application as well as testifying falsely to the court regarding his income, assets, and spending. The trial court specified Husband's fraudulent conduct as follows:

> This Court has identified various instances in which Dan committed fraud in these alimony proceedings. Dan concedes that in discovery of these alimony proceedings in April 2010, he produced false tax returns for the years 2007-09. *See* Dan Morgan Dep. at 42, May 18, 2012. He failed to include any bonuses that he earned from 2007-09, any consulting fees earned in 2007-08, or stock proceeds from 2009. *See id*. at 61-62. Dan falsely testified in 2010 that he received no bonuses, stock options or stock grants. *See id.* at 46. Dan also testified that he is unsure whether he was aware of his July 2, 2007 grant of restricted stock units when he denied owning any stock or stock options on August 16, 2007. *See* T.P., Support Appeal Hearing, at 27-29, September 20, 2012.
>
> In December 2011, Dan produced a second set of false tax returns for the years 2007-10. *See id.* at 47-51. While the 2008 and 2009 returns were only slightly altered, Dan's 2007 return reflected an adjusted gross income approximately $130,000 less than Dan's actual adjusted gross income. *See id.* at 58-59.
>
> Dan initially testified that his significant other, Ms. Langbein, paid the down payment on the couple's home purchased in 2008, but later testified that he "guesses" that the $75,000 withdrawn from his bank account the day of settlement went towards the down payment. *See* T.P., Alimony Hearing, at 43, May 24, 2010; *see also* T.P., Support Appeal Hearing, at 38-39, 163-65, July 2, 2012. Dan also produced a fraudulent mortgage application in connection with the 2008 home purchase, and continues to deny that he has ever had assets in the amount reflected in the subsequently produced and actual mortgage application. *See* T.P., Support Appeal Hearing, at 11-14, September 20, 2012.

- 11 -

Dan testified in September 24, 2007 that his ING bank account always had zero balance, but later conceded that his ING account had an opening balance of $65,000 on September 20, 2007. *See* T.P., Support Appeal Hearing, at 148, 156-57, July 2, 2012. Dan further conceded that he had $82,000 to $88,000 more from December 2007 through January 2008 than what he submitted in a financial statement. *See id.* at 157. Additionally, Dan conceded that he provided untruthful testimony regarding international travel. *See id.* at 165-69.

Dan responded to interrogatories in April 2010 that he had no employment contract with Tyco. *See* T.P., Support Appeal Hearing, at 30-31, September 20, 2012. Dan acknowledges that he received an offer letter from Tyco, and signed said letter on December 27, 2006 under the terms "[p]lease sign below to signify your acceptance of our offer of employment and its terms." *Id*. at 31-33. Dan disputes that the offer letter is an employment contract. *See id.* at 31-33, 36. Dan also argues that the offer letter language "will receive an option grant and restricted stock grant in line with grant guidelines for your position and level" does not guarantee him either option grants or restricted stock grants. *Id.* at 34. Dan did testify that he only received stock options in 2007, but has received restricted stock grants every year since becoming employed by Tyco. *See id.* at 35-36.

Trial Court Order and Opinion, dated 9/27/16, at 4-6 (footnotes omitted).

Our review of the record supports the trial court's findings.

Despite the trial court characterizing Husband's deceitful conduct over a period of more than five years as "despicable actions" and a "fraud upon the court," the trial court declined to apply the doctrine of unclean hands. The trial court refused to assert its equitable powers and instead applied the alimony factors using Husband's new evidence that he presented after his Wife discovered the fraud. *Id.* at 11. We find this to be an abuse of discretion.

When Husband filed his Petition to Modify Alimony, he was requesting that the court use its equitable powers to modify his alimony obligation. In light of the fraud that Husband committed not only on the court, but also to the parties and judicial system itself, the trial court should have invoked the doctrine of unclean hands and denied Husband's request to modify Husband's alimony obligations. Although this conclusion involves disregarding the Section 3701(b) factors, Husband committed a fraud on Wife and the judicial system on the most important issue in the Petition to Modify. This fraud is particularly egregious because Husband, as an attorney, is an officer of the court and has a professional obligation to not "knowingly make a false statement of material fact or law to a tribunal." Rules of Professional Conduct, Rule 3.3(a).

While it is hard to quantify the far-reaching effects of Husband's years of fraud upon the court and Wife, the fraud resulted in multiple lower court hearings and two appeals to this Court over the past ten years. This was unquestionably detrimental to Wife. **See Terraciano, supra** at 237. Husband's misconduct was not limited to a small or unimportant portion of the case; rather, for five years, most of the evidence that Husband fraudulently produced and testified to dealt with his financial status, the most significant issue in the Petition to Modify.

This Court finds Husband's conduct to be appalling; it most certainly shocks the moral sensibilities of this Court. We agree with Wife that the

only equitable result is to deny Husband's Petition to Modify Alimony *ab initio*, i.e., from the beginning. **See** 23 Pa.C.S. § 4352(e) (stating that a support obligation may be modified retroactively "if the petitioner was precluded from filing a petition for modification by reason of a . . . misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition."). The trial court abused its discretion when it failed to grant this relief.

**The Trial Court Abused its Discretion When it Failed to Award Wife the Full Amount of Attorneys' Fees that Wife Incurred From the Inception of Husband's Fraud**

In her next issue, Wife avers that she is entitled to a full award of attorneys' fees from the inception of Husband's fraud. Wife's Brief at 60. The trial court only awarded Wife attorneys' fees from the date Wife discovered the fraud, not when Husband began perpetrating the fraud, and only awarded 75% of such fees.

The parties stipulated that the hourly rates that Wife's attorneys charged were reasonable, Husband had no objection to line items on the bills and there was no necessity for Wife to call an expert witness to testify as to the services provided. In light of the stipulations, the trial court should have limited its analysis to whether Wife was entitled to the stipulated amount of attorneys' fees. Once the trial court did so, it should not have overridden the parties' stipulation and made a separate determination of the reasonableness of those fees.

We review a trial court's decision to grant or deny attorney's fees for an abuse of discretion. **Brody v. Brody**, 758 A.2d 1274, 1281 (Pa. Super. 2000). If a party to a divorce action shows actual need, an award of counsel fees is appropriate to put the parties on par in maintaining or defending that action. **Verholek v. Verholek**, 741 A.2d 792, 799 (Pa. Super. 1999). Further, "a party to an action may be awarded counsel fees when another party engages in dilatory, obdurate, or vexatious conduct during the pendency of a matter." **Id.** (citing 42 Pa.C.S. § 2503(7)).

Instantly, the trial court found Husband's fraudulent conduct to be both obdurate and dilatory, and "squarely within the purview of [42 Pa.C.S. § 2503(7)] permitting an award of counsel fees to [Wife]."[3] Trial Court Order and Opinion, dated 9/27/16, at 28. Despite this finding, the trial court awarded only 75% of the attorneys' fees and only those fees that Wife incurred **after** she discovered Husband's fraud. We conclude that this was an abuse of discretion.

In an analogous case, **Krebs v. Krebs**, 975 A.2d 1178 (Pa. Super. 2009), when a husband fraudulently concealed increases to his income from 2001 through 2006 in order to avoid paying additional child support, this

_____

[3] This Court has defined "obdurate" as "stubbornly persistent in wrongdoing." **In re Estate of Burger**, 852 A.2d 385, 391 (Pa. Super. 2004). "Conduct is 'dilatory' where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." **Id.**

Court found that Husband's fraudulent conduct was the sole cause of the proceedings resulting in the attorneys' fees in question. ***Krebs, supra*** at 1182. Accordingly, this court held that the trial court abused its discretion when it awarded only one-third of the attorneys' fees that the wife incurred during the case instead of the full amount requested. ***Id.***

Here, comparable to ***Krebs, supra***, Husband's fraudulent conduct is the sole cause of the ten years of legal proceedings that resulted in Wife's legal fees. Moreover, the parties stipulated to the reasonableness of the attorneys' fees. Accordingly, the trial court abused its discretion when it not only awarded only 75% attorneys' fees, but also only awarded them from the time of discovery of Husband's fraud. Instead, the trial court should have awarded 100% of Wife's attorneys' fees and awarded them from the inception of Husband's fraud, namely the filing of the 2007 Petition to Modify Alimony.

Moreover, we conclude that Husband's Application for Stay of Trial Court Order dated September 27, 2016 Pending Appeal was dilatory, obdurate, and vexatious, and grant Wife's Re-Application for Counsel Fees and Costs Under Pa.R.A.P. 2744.[4]

---

[4] Rule 2744 states:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including

*(Footnote Continued Next Page)*

**CONCLUSION**

In conclusion, the trial court abused its discretion when it failed to apply the doctrine of unclean hands and to grant Wife's request to deny Husband's 2007 Petition to Modify Alimony *ab initio.* The trial court also abused its discretion when it failed to award 100% of the attorneys' fees incurred by Wife from the inception of the case. We remand and instruct the trial court to 1) deny Husband's 2007 Petition to Modify Alimony *ab initio*; 2) reinstate the alimony award of $5000.00 per month to Wife retroactively; 3) award 100% of the attorney's fees incurred by Wife from the inception of the case in 2007; and 4) calculate and award the attorney's fees incurred by Wife in preparation of the Answer to Husband's Application for Stay pursuant to Pa.R.A.P. 2744. In light of our disposition, we do not need to address the remainder of Wife's issues and, likewise, do not need to address any of Husband's issues. Consequently, we deny as moot Wife's Re-Application for

*(Footnote Continued)* ————————

(1) a reasonable counsel fee and

(2) damages for delay at the rate of 6% per annum in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744

Quashal of [Husband]'s Appeals Docketed at 1841 MDA 2016 and 128 MDA 2017.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Ott joins the Opinion.

Judge Strassburger files a Concurring Statement in which Judge Ott and Judge Dubow join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/20/2018