J-S71004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEITH CAMPBELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALICE CAMPBELL | : | No. 1925 EDA 2019 |

Appeal from the Order Entered June 4, 2019
In the Court of Common Pleas of Chester County Civil Division at No(s):
2010-08326-DI

BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                      Filed: May 7, 2020

Keith Campbell ("Husband") appeals *pro se* from the June 4, 2019 order directing him to pay $25,000 to Alice Campbell ("Wife") under the terms of a property agreement that was incorporated into the parties' divorce decree (the "Settlement Agreement").  We quash this appeal as interlocutory, and remand for further proceedings consistent with this memorandum.

The parties were married in March 1999.  Ultimately, a divorce decree was issued in September 2012.  The Settlement Agreement was incorporated in the decree and provided, *inter alia*, as follows:

> The marital residence located at 165 Mountain View Drive, West Chester, Pennsylvania shall become the sole and separate property of Wife with Husband waiving all right, title and interest therein.  There are currently three liens against the property.  The first mortgage is in Wife's name alone.  The second mortgage is in Husband's name alone.  The third mortgage is in joint names. Wife agrees she will pay the first and second mortgages on a timely basis and will indemnify and hold Husband harmless with

respect to the first and second mortgages. Neither party has made payments on the third mortgage[,] which is held by Cross & Simon. The parties agree that Wife will be responsible for 37.5% and Husband 62.5% of the third mortgage liability if, as and when repayment is sought. . . . Wife will attempt to refinance the first and second mortgages by December 31, 2014 so as to remove Husband's name from the second mortgage. In the event she is unsuccessful, Wife will make a good faith effort to refinance the first and second mortgages at two[-]year intervals. Husband shall cooperate in the refinancing process.

Master's Recommendation, 10/2/12, at § 2 ¶ 2.

At the time that the Settlement Agreement was incorporated, the parties were operating under the belief that these three liens were, in order of priority: (1) a mortgage from Aurora Loan Services in Wife's name for $199,524.66; (2) a home equity line of credit from First Tennessee Bank in Husband's name for $115,385.13; and (3) a lien from Cross & Simon, LLC for legal services rendered to Husband for a lawsuit that related to his business for $184,629.04. *See* Trial Court Opinion, 8/22/19, at 3-6. However, Cross & Simon's lien was actually second-in-priority, while First Tennessee's lien was third-in-priority. *Id*. at 3. As a result of this "mutual mistake" by the parties, Wife alleged that she was "unable to refinance the mortgages as the loans were greater than the value of the property." *Id*.

In February 2016, Husband filed a petition for special relief asking the trial court to order that the marital residence, in which Wife and the parties' three minor children were residing, be sold. *See* Opinion, 3/26/18, at 2. Specifically, Husband argued Wife would be unable to continue paying the installments on the First Tennessee lien, which were set to more than triple

when the loan "reset" in March 2017 from $400 to $1,300 per month. *Id*. at 3. Wife argued that the Settlement Agreement had been premised upon a mutual mistake by the parties regarding the priority of the liens. *See* Trial Court Opinion, 8/22/19, at 4. She filed a petition for special relief pursuant to 23 Pa.C.S. § 3323(f), requesting the equitable reformation of the Settlement Agreement based upon the mutual mistake of the parties. *Id*.

Ultimately, the trial court granted Wife's petition and reformed the Settlement Agreement to include the following provision:

> The marital residence located at 165 Mountain View Drive, West Chester, Pennsylvania shall be listed for sale within thirty (30) days and sold with the parties accepting the offer recommended by their realtor. Proceeds from the sale shall be allocated first to the outstanding mortgage, second to the principal of the second lienholder Cross & Simon, third to the lien holder [First] Tennessee and finally to [Wife].
>
> In the event of any deficiency it shall be apportioned as follows: Cross & Simon 62.5% to [Husband], 37.5% to [Wife], and [First] Tennessee 100% to [Wife].
>
> If the liens are charged off by the lien holder then any resulting 1099 income shall be apportioned as follows: Cross & Simon 62.5% to [Husband], 37.5% to [Wife], and [First] Tennessee 100% to [Wife].

Order, 6/6/18, at 1-2.

On January 25, 2019, the martial residence was sold for $340,000. Under the terms of the reformed agreement, Wife paid off the first mortgage from Aurora Loan Services in its entirety. Wife negotiated a settlement of the lien held by Cross & Simon whereby the firm accepted $100,000 as a full satisfaction of the parties' joint obligation, and forgave the remainder of the

debt. Only $60,000 of the parties' joint debt to Cross & Simon represented principal. However, Wife repaid the entire $100,000 from the proceeds of the marital residence. *Id*. at 5-6. Finally, Wife paid First Tennessee $20,770.80, which issued a 1099-C in the amount of $94,614.33 for the unpaid portion of the lien. *Id*. at 6. Husband signed a letter indicating his approval of the sale under these terms. *See* N.T. Hearing, 3/25/19, at 22.

Several weeks after the sale, Wife filed a petition for special relief seeking reimbursement from Husband for part of the $40,000 in interest that was paid to Cross & Simon from the proceeds of the marital residence. *Id*. Specifically, Wife requested that Husband be ordered to pay her $25,000, or 62.5 percent of $40,000. *See* Petition for Special Relief, 2/19/19, at ¶¶ 1-9. Overall, Wife argued that she was required to pay the full amount of the Cross & Simon debt out of the proceeds of the marital residence. *Id*. Husband responded that he was not obligated to reimburse Wife under the terms of the reformed agreement, arguing that there was no "deficiency" to apportion.

On March 25, 2019, a hearing on Wife's petition was held at which both parties testified and presented arguments *pro se*. Husband raised concerns that Wife would not be able to honor her obligation to pay for the tax consequences associated with the "charge-off" from First Tennessee. *See* N.T. Hearing, 3/25/19, at 16 ("[When Wife] does not actually pay the taxes that she has testified that she will pay, I will unfortunately have to file another

action to come back to get those funds but the first payment is due April – next month.").[1]

On April 23, 2019, Husband filed a new petition for special relief, seeking to enforce the terms of the reformed agreement requiring Wife to pay for the tax consequences related to First Tennessee's substantial loan forgiveness. *See* Petition to Hold Alice Campbell in Contempt, 4/23/19, at ¶¶ 1-10. In that filing, Husband averred that Wife had defaulted by refusing to pay the tax assessment on the First Tennessee charge-off by April 15, 2019, or the deadline first-quarter taxes set by the Internal Revenue Service. *Id*. at ¶ 6. That same day, the trial court issued a rule to show cause upon Wife as to why Husband's petition should not be granted and scheduled a hearing for June 24, 2019.

Wife filed a timely answer arguing that Husband was mistaken regarding when the First Tennessee debt forgiveness would trigger tax consequences. *See* Wife's Answer, 5/6/19, at ¶ 4 ("[Wife] believes and therefore avers that any resulting taxes due from the sale of the house are not due until the 1099-C is issued in January 2020 and 2019 taxes are filed in April 2020.").

---

[1] The trial court explained this issue of timing in its Rule 1925(a) opinion: "According to [Husband], his first quarterly tax obligation on the [First Tennessee] charge-off was not due until April 15, 2019, so at the time of the hearing on March 25, 2019 there was no default to address." Trial Court Opinion, 8/22/19, at 11. The trial court was mistaken, however, in asserting that Husband did not file a separate petition seeking relief related to the First Tennessee charge-off. *Cf*. *id*. at 10-11 ("Plaintiff did not file a separate petition . . . seeking such relief."). Husband did, in fact, file such a petition.

On June 4, 2019, the trial court granted Wife's petition under the equitable doctrine of unjust enrichment. *See* Order, 6/4/19, at 2 n.1 ("Had Wife not paid this $40,000 shortfall to Cross & Simon, LLC, the law firm would have had recourse to both Wife and Husband for the [total] amount of the debt due . . . ."). On July 3, 2019, Husband filed an appeal from the trial court's June 4, 2019 order. Thereafter, both Husband and the trial court timely complied with Pa.R.A.P. 1925.

On August 23, 2019, the trial court issued an order staying all proceedings in the above-captioned matter pursuant to Pa.R.A.P. 1701, including the evidentiary hearing on Husband's still-pending petition.

Husband has listed four issues for our disposition:

(1) Did the lower court err and abuse its discretion by allowing [Wife's] petition to be heard when [Wife] came before the court with unclean hands?

(2) Did the lower court err and abuse its discretion by granting [Wife's] petition for special relief when [Wife] came before the court with unclean hands?

(3) Did the lower court err and abuse its discretion by applying the doctrine of unjust enrichment?

(4) Did the lower court err and abuse its discretion regarding its interpretation of loan deficiency?

Husband's brief at 3-4 (issues numbered for clarity).

Before assessing the merits of Husband's claims, we must first ascertain whether this appeal properly lies from an appealable order. *See Terpin v. Terpin*, 460 A.2d 1188, 1189 (Pa.Super. 1983) ("Although neither party

raises the question of the appealability of the order in question, we not only

may but must raise the question of jurisdiction *sua sponte*.").  This approach

is taken in order to promote efficiency and finality:

> Stated generally, the policy underlying the principle than an order is not appealable unless it puts the appellant "out of court" is that piecemeal litigation should be avoided; the appellate courts will use their resources more economically if they review a case only once, rather than deciding one issue on one appeal, and another issue on a later appeal.

***Id***.

Specifically, we must determine whether the June 4, 2019 order

granting Wife's petition for special relief is a "final" order, and therefore

appealable as of right.  Husband has identified his appeal as lying from a "final"

order pursuant to Pa.R.A.P. 341(a).  ***See*** Husband's brief at § I.  In this

context, "[a] final order is one which ends the litigation, or disposes of the

case. . . .  An order is interlocutory and not final unless it puts the litigant out

of court."  ***Noto v. Noto***, 437 A.2d 1255, 1257(Pa.Super. 1981).

Furthermore, it has consistently been held that where "ancillary claims remain

unresolved, issues such as those seeking special relief, are interlocutory and

unappealable."  ***Mensch v. Mensch***, 713 A.2d 690, 691 (Pa.Super. 1998).

To make this determination, we must "examine the ramifications of the order."

***Curran v. Curran***, 667 A.2d 1155, 1156 (Pa.Super. 1995).

Simply stated, this appeal is premature and interlocutory.  At the time

that the trial court issued its June 4, 2019 order, Husband's economic claims

against Wife regarding the tax consequences of First Tennessee's debt

forgiveness were (and are) still pending before it. Critically, the bulk of Husband's arguments in this appeal depend upon the resolution of that unresolved claim. Specifically, Husband's first two issues assert that Wife should not have access to the equitable relief granted by the trial court because she has allegedly defaulted upon her aforementioned obligations.[2] *See* Husband's brief at 10-11 ("The doctrine of unclean hands [o]n which this [o]rder is based is without merit as [Wife] is [c]ourt-ordered to pay the taxes and has failed to do so."). However, the trial court never had the opportunity to render a decision regarding that claim.

Although the June 4, 2019 order granted Wife relief, it did not dispose of all the claims of the parties related to the sale of the marital residence.[3] Therefore, it was not "final" under Rule 341, and thus not appealable as of right under Pennsylvania law.[4] *See Puricelli v. Puricelli*, 667 A.2d 410, 412

---

[2] Husband's first two issues relate to the legal doctrine of "unclean hands." *See Morgan v. Morgan*, 193 A.3d 999, 1005 (Pa.Super. 2018) ("The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue.") (internal emphasis omitted).

[3] There is no indication that the June 4, 2019 order is interlocutory but appealable as of right. *Compare with* Pa.R.A.P. 311(a)(1)-(8). Furthermore, the trial court never issued a finality determination under Pa.R.A.P. 341(c).

[4] We make no comment on the relative merits or probity of Husband's arguments. Assuming that no other petitions are filed by the parties, these claims will be ripe for review once the court addresses Husband's outstanding petition and issues a final order disposing of all claims and all parties. *See Bird Hill Farms, Inc. v. U.S. Cargo & Courier Service, Inc.*, 845 A.2d 900, 903 (Pa.Super. 2004) ("Once an appeal is filed from a **final order**, all prior interlocutory orders are subject to review." (emphasis added)).

(Pa.Super. 1995) ("The order in the instant case did not dispose of all claims or parties nor did it otherwise put the litigants out of court."). Accordingly, we lack jurisdiction and are compelled to quash this appeal as interlocutory. ***Id***. at 414 (quashing an appeal from an interlocutory and unappealable order).

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/20