J-S18017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| INGEBORG F. SMITH F/K/A INGEBORG F. FOREHLICH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID H. SMITH | : | |
| | : | No. 2366 EDA 2022 |
| Appellant | : | |

Appeal from the Order Entered August 19, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  PACSES: 484116754

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 22, 2022**

David H. Smith ("Husband") appeals from the August 19, 2022 order that denied his Appeal and Notice of Demand for a Hearing *De Novo*, thereby reaffirming the hearing officer's decision to dismiss Husband's petitions to modify support and alimony and, further, awarded Appellee, Ingeborg F. Forehlich ("Wife"), attorney's fees in the amount of $38,876.  Husband challenges the trial court's award of attorney's fees.  Upon review, we affirm.

The relevant procedural and factual history is as follows.  Husband and Wife divorced in 2018 after approximately 20 years of marriage.  During the marriage, Husband was employed at Goldman Sachs as an investment banker and earned between $1,000,000 and $1,500,000 annually during the last eight years of the marriage.  Wife is originally from Germany and cared for

_____

[*] Former Justice specially assigned to the Superior Court.

the couple's four children during the entirety of the marriage. Wife did not have any independent assets or earn any income during the marriage.

On November 20, 2018, a hearing officer ordered Husband to pay $6,000 per month in child support. On December 31, 2018, the parties entered into a property settlement agreement (the "Agreement") which, *inter alia*, divided the parties' property and provided that Husband would pay Wife $7,500 per month in alimony for six years.[1] The Agreement allows for modification in certain circumstances and specifically provides: "The alimony payments provided for in this agreement shall be modifiable only in the event of a changed circumstances of either party of a substantial and continuing nature, including but not limited to, Husband's job loss or serious health condition which directly affects his ability to work." Agreement, 12/31/18, at 40.

On June 13, 2019, the court terminated support for one child who turned 18 years old and ordered Father to continue to pay $6,000 per month for the remaining two children who were under the age of 18.

In Summer 2020, Husband resigned from employment at Goldman Sachs and began employment at Morgan Stanley Smith Barney ("Morgan Stanley") where Husband received a $2,900,000 "loan" as a signing bonus.

In July 2020, Husband sent Wife an email advising Wife that he could use the Morgan Stanley loan to pay for college for the parties' children. In

---

[1] The Agreement was incorporated, but not merged, into the parties' divorce decree.

April 2021, Husband sent Wife another email advising that he could not afford to pay for college tuition for the parties' children as well as his support payments. In the email, Husband asked Wife to put aside money that the parties' split from the sale of a marital beach property to pay for half of the children's college education. Husband threatened Wife that if she did not agree to this plan he would "have no choice but ask the [c]ourt to reduce your monthly payments." N.T. Hearing, 8/9/22, at Exhibit R10.

On April 19, 2021, Husband filed a petition to modify child support alleging that two children have emancipated, and that his income level has fallen. On May 24, 2021, Husband filed a second petition to modify child support asserting the same. On June 19, 2021, Husband filed a petition to modify alimony, alleging that he "was compelled to leave his position at Goldman Sachs in 2020 and was compelled to accept a position at Morgan Stanley [] in July of 2020. This resulted in a concomitant reduction in his income which was totally involuntary." Petition to Modify, 6/19/21, at ¶ 6. Husband further alleged that he "was compelled, in order to meet his financial obligations, to obtain a loan from his employer Morgan Stanley [] in the amount of $2,900,000." *Id.*

In response, Wife filed a motion for a protracted hearing and order for discovery alleging that Husband did not experience a substantial and continuing change in circumstances as required by the agreement to modify alimony. Rather, Wife asserted, Husband voluntarily left his employment at Goldman Sachs to commence employment at Morgan Stanley and received a

$2,900,000 bonus characterized as a "loan." In addition, Wife requested discovery from Husband evidencing his current income which Husband had failed to provide despite numerous requests.

On April 4, 2022, after a three-day hearing, a hearing officer dismissed Husband's petitions and recommended no change to the existing alimony and child support orders. On April 7, 2022, Husband filed an Appeal and Notice of Demand for a Hearing *De Novo*.

On August 9, 2022, the trial court held a hearing. Husband appeared *pro se,* and the court heard testimony from both Husband and Wife.

At the conclusion of the hearing, Wife submitted a Certification of Counsel Fees in support of her request for counsel fees. On August 19, 2022, the court denied and dismissed Husband's appeal and awarded Wife $38,876 in attorney's fees. In awarding attorney's fees, the court discredited Husband's testimony that his change in employment was involuntary and, further, found that Husband acted in bad faith in bringing claims to modify alimony and child support.

Husband timely appealed. Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband raises a sole issue for our review: "Was the [c]ourt's award of $38,876 in counsel fees against Husband an abuse of discretion unsupported by the relevant facts of the case?" Husband's Br. at 4.

We review a trial court's decision to grant or deny attorney's fees for an abuse of discretion. ***Morgan v. Morgan***, 193 A.3d 999, 1007 (Pa. Super.

- 4 -

2018). "A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." ***A.L.-S. v. B.S.***, 117 A.3d 352, 361 (Pa. Super. 2015). It is well settled that "on issues of credibility and weight of the evidence, we defer to the findings of the trial court which has had the opportunity to observe the proceedings and demeanor of the witnesses." ***K.D. v. E.D.***, 267 A.3d 1215, 1230 (Pa. Super. 2021). It is not the role of this Court to "re-find facts, re-weigh evidence, and re-assess credibility." ***D.R.L. v. K.L.C.***, 216 A.3d 276, 286 (Pa. Super. 2019).

In his sole issue before this Court, Husband avers that the trial court abused its discretion when it awarded attorney's fees to Wife. Husband's Br. at 4. Husband argues that his three petitions to modify all contained colorable arguments and, therefore, the court erred in awarding attorney's fees. ***Id.*** at 17-18. Husband asserts that his petition to modify alimony was colorable because his changed financial circumstances constituted a substantial and continuing change under the terms of the Agreement. ***Id.*** at 18. Husband further argues that his petitions to modify child support were colorable because his income had declined, two children covered by the support order had turned 18, and Pennsylvania law does not distinguish between voluntary and involuntary job loss when considering whether to modify child support. ***Id.*** at 22-25.[2] Husband's arguments misstate the applicable law.

_____

[2] Husband also argues, for the first time on appeal, that (1) the $2,900,000 loan from Morgan Stanley was not forgivable and, therefore, was neither
*(Footnote Continued Next Page)*

"Marital settlement agreements are private undertakings between two parties, each having responded to the give and take of negotiations and bargained consideration." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1258 (Pa. Super. 2005) (citation and internal quotation marks omitted). A marital settlement agreement which is incorporated but not merged into the divorce decree—like the instant Agreement which provides that Husband will pay $7,500 per month in alimony to Wife—survives the decree, is enforceable at law or equity, and is governed by the law of contracts unless the agreement provides otherwise. ***Id.*** In reviewing disputes regarding marital support agreements, a court may award attorney's fees when either party engages in "dilatory, obdurate, or vexatious conduct during the pendency of a matter" or if "the conduct of [a] party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S. § 2503(7) and (9).

The analysis for the award of attorneys' fee, however, is different for challenges to court orders requiring a party to pay child support. In such cases, the award of attorney's fees is governed by statute. Specifically, Section 4351 of the Domestic Relations Code provides that if an obligee prevails in a proceeding to obtain a child support order, "the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel

_____

salary nor a loan and (2) the trial court erred during the *de novo* hearing when the court advised Husband not to submit evidence regarding Wife's income. Husband's Br. at 25, 38. Husband failed to raise these issues in his Rule 1925(b) statement and, therefore, failed to preserve them for our review. ***See*** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a). They are, thus, waived.

and other reasonable costs and expenses incurred by the obligee and the obligee's witnesses." 23 Pa.C.S § 4351(a). The court has discretion in awarding attorney's fees for challenges to court orders mandating child support and should consider the totality of the relevant circumstances. *Bowser v. Blom*, 807 A.2d 830, 836 (Pa. 2002). The court's "overriding concern is the best interests of the children." *Id.* Notably, factors which the court **may** consider in awarding attorneys' fees include:

> (1) whether the obligor's unreasonable or obstreperous conduct impeded the determination of an appropriate support order; (2) whether the obligor mounted a fair and reasonable defense in a child support order; (3) whether the obligor's failure to fulfill his moral and financial obligation to support his children required legal action to force him to accept his responsibilities; and (4) whether the financial positions and financial needs of the parties are disparate.

*Krebs v. Krebs*, 944 A.2d 768, 778 (Pa. Super. 2008) (citing *Bowser,* 807 A.2d at 835-37).

Here, the trial court found Husband's litigious conduct to be arbitrary, dilatory, vexatious, and/or in bad faith. The court did not believe Husband's averments that he filed petitions to modify alimony and support because his involuntary change in employment resulted in reduced income and he could no longer afford to pay the agreed-upon alimony or court-ordered child support to Wife. Instead, the court credited Wife's testimony that Husband would never switch jobs if it was not "beneficial for him." N.T. Hearing, 8/9/22, at 166. The court also placed weight on the fact that Husband's move to Morgan Stanley was newsworthy, and emphasized an article submitted into

evidence, entitled "Morgan Stanley Loses Two Multi-Million Dollar Teams, Gains a Goldman Broker," which was written about Husband's move from Goldman Sachs to Morgan Stanley. *Id.* at Exhibit R12. The court found:

> [Husband] initially testified that he was forced out of Goldman Sachs, however subsequent testimony revealed that [Husband] was not terminated nor was he ever threatened with termination for any reason. The evidence established that Husband voluntarily resigned from Goldman Sachs in May 2020. . . . The only change in circumstances was that [Husband] got a new job working for a comparable employer at a comparable compensation rate. [Husband] now claims that his income has been so drastically reduced that he can no longer afford to pay the agreed[-]upon alimony. [Husband] is not a rookie in the finance industry and this [t]rial [c]ourt found no evidence that he lacked an understanding of what a lateral move would require. An article [submitted into evidence] cites [Husband]'s move to Morgan Stanley and describes him as a "career private wealth management advisor" who generated [$4,000,000] in fees and commissions at Goldman Sachs. [Husband] negotiated his own employment contracts for millions of dollars in income, bonuses and commissions all of which were reviewed by this trial court[.] There was no evidence that [Husband] was duped or deceived by Morgan Stanley in his employment terms, to the contrary, the terms seem to be extremely profitable to [Husband].

Trial Ct. Op., filed 12/8/22, at 8-9 (citing Exhibit R12).

The trial court further found that Husband's income was not actually reduced by the change in the employment:

> [T]he evidence supports a finding that [Husband] did not accept a lower paying job with Morgan Stanley nor was his income actually reduced. Although his starting base salary, bonuses and/or commissions was not identical to his last recorded at Goldman Sachs, the [$2,900,000] loan was worth two years of this pre-resignation salary and would easily have supported him until his base salary and commissions reached pre-Morgan Stanley levels.

*Id.* at 11.

The trial court also placed weight on the fact that Husband's change in employment garnered him the benefit of a $2,900,000 loan as a signing bonus. The court noted that the loan was "not an option, but was a key term to his new employment" and, despite Husband's assertions to the contrary, provided him ample income to pay support. *Id.* at 9. The court opined:

> Although [Husband] has engaged in a concerted campaign to reduce support with no legal basis, [Wife] has consistently prevailed. [Husband] not only has always had the means to pay support, but he also has the means to pay her counsel fees. Furthermore, he could have prepaid [Wife]'s alimony owed to her under the Agreement when he received [$2,900,000] from Morgan Stanley, eliminating the need for any modification or litigation, however, he chose not to take that action. The evidence supports a finding that the entirety of [Husband]'s litigation, except for the contempt filing, over the last two years has been an effort to thwart or delay [Wife]'s legal right to receive support.

*Id.* at 15-16.

The court further emphasized the disparity in the parties' incomes, and Husband's ability to continue to pay the agreed-upon alimony and court-ordered child support:

> The evidence also supports a finding that there is substantial disparity between the parties' incomes. Pursuant to the support order, [Wife]'s annual net income is $0, as she testified, she immigrated to the United States in 1998 with only a high school education. [Husband] has consistently earned between [$1,200,000] and [$1,500,000] from 2011 through 2019. In 2020, [Husband] earned approximately $900,000. Even at an earning capacity of [$1,400,000], [Husband]'s net income would be approximately $65,000 per month. When these number are combined with the [$2,900,000] loan from Morgan Stanley, [Husband] can surely afford to pay [Wife]'s counsel fees and still maintain his standard of living. Simply because [Husband] does

not want to pay alimony does not mean that he cannot pay alimony or that he does not have the earning potential to pay child support at the same rate as when he worked at Morgan Stanley or the agreed[-]upon alimony. [Wife]'s future earning potential is minimal and will more than likely never be comparable to [Husband]'s income therefore her available means of support for both herself and the remaining minor child must be provided by [Husband].

*Id.* at 16.

Finally, the trial court placed weight on Husband's April 2021 email to Wife, where he threatened Wife that he would file to terminate alimony if Wife did not agree to split the cost of children's college education. The court found:

[Husband] acted in bad faith in bringing a claim to terminate alimony and his intentional and voluntary change in employment was not contemplated by the Agreement. For [Husband] to threaten [Wife] with modification if she did not acquiesce to his demands that she pay college expenses were bad faith tactics, especially when he attempted to use the Agreement to then make good on his threats.

*Id.* at 17. Our review of the record supports the trial court's findings.

Husband devotes a majority of his Brief to arguing the merits of his petitions to modify alimony and child support. However, it is important to note that the merits of Husband's petitions are not before this Court. Rather, it is this Court's job to determine whether the trial court erred in awarding attorney's fees.

With regards to Husband's petition to modify alimony, the evidence supports the trial court's findings that (1) Husband voluntarily moved to Morgan Stanley, (2) Husband could afford to continue to pay alimony to Wife, (3) Husband petitioned the court to terminate alimony because he was upset

- 10 -

that Wife would not agree to split the cost of children's college. Thus, the trial court properly concluded that Husband's conduct was arbitrary, dilatory, vexatious, and/or in bad faith pursuant to 42 Pa.C.S. § 2503(7) and (9).

With regards to Husband's petition to modify child support, he failed to prevail on the merits. Therefore, pursuant to 23 Pa.C.S § 4351(a), the trial court had the discretion to award reasonable attorney's fees. Looking at the totality of the circumstances, the trial court placed great weight on the disparity in the parties' financial positions and financial needs in awarding counsel fees, and the record supports the trial court's findings.

We decline to usurp the trial court's credibility determinations or reweigh the evidence. As the record supports the trial court's findings, we discern no abuse of discretion in the trial court's award of attorney's fees.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2023

- 11 -