Husak *v.* Berkel, Incorporated, Appellant, et al.

Argued April 14, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William R. Tighe,* with him *Stein & Winters,* for appellant.

*Thomas Hollander,* with him *Evans, Ivory & Evans,* for John A. Husak, Jr., appellee.

*Charles Kirshner,* with him *Rosenberg, Kirshner & Kaleugher,* for SCM Corporation, additional defendant, appellee.

*John D. Chinello, Jr.,* with him *Chinello, Chinello, Maddy & Shelton,* for amicus curiae.

OPINION BY JACOBS, J., June 24, 1975:

This appeal is from the order of the lower court granting the motion for summary judgment of the *additional* defendant SCM Corporation (hereinafter SCM), and denying the motion for summary judgment of the original defendant Berkel Incorporated (hereinafter Berkel). Appellant Berkel argues that the decisions were improper

because, as between SCM and Berkel, SCM alone could rightfully be held liable in the personal injury action brought by the plaintiff in this case. We agree that SCM's motion for summary judgment was improperly granted and therefore reverse the lower court's order in that respect. We do not consider the propriety of the order below refusing Berkel's motion for summary judgment because that order is interlocutory at this stage and cannot be reviewed by this Court.[1]

The plaintiff, John A. Husak, Jr., instituted this action against original defendant Berkel claiming damages for personal injuries sustained on March 13, 1969, at the H. J. Heinz Company where he was employed as a cook. The plaintiff's complaint indicated that he had suffered the traumatic amputation of his right hand and forearm when it accidently became caught in a food grinding machine. It was alleged that a predecessor company of Berkel had manufactured the grinding machine and sold it to H. J. Heinz Company. The plaintiff sought to hold Berkel liable for his injuries on a theory of implied warranty. Berkel joined as additional defendants SCM and H. J. Heinz Company.

---

1. Appeal may be taken to the Superior Court only from final orders of the common pleas courts, except where provided by statute. Act of July 31, 1970, P.L. 673, No. 223, art. III, §302, 17 P.S. §211.302 (Supp. 1974-75). An order granting an additional defendant's motion for summary judgment has the effect of dismissing such defendant and is therefore final and appealable. Cf. Luitweiler v. Northchester Corp., 456 Pa. 530, 319 A.2d 899 (1974); Brandywine Area Joint School Auth. v. VanCor, Inc., 426 Pa. 448, 233 A.2d 240 (1967); Rau v. Manko, 341 Pa. 17, 17 A.2d 422 (1941); Cummings v. A. F. Rees, Inc., 126 Pa. Superior Ct. 117, 190 A. 416 (1937). An order refusing a motion for summary judgment, however, is interlocutory and cannot be appealed until a final order is entered in the cause. Cf. Brandywine Area Joint School Auth. v. VanCor, Inc., supra; Mount Lebanon Township v. Hobbes, 201 Pa. Superior Ct. 30, 189 A.2d 316 (1963); Redding v. Stage, 188 Pa. Superior Ct. 195, 146 A.2d 333 (1958); Cummings v. A. F. Rees, Inc., supra.

It was Berkel's position in support of its motion for summary judgment, and is its position now on appeal from the granting of SCM's motion, that SCM and not Berkel succeeded to the liabilities of the manufacturer of the food grinding machine here involved. The following facts established by the record are relevant to this contention. The food grinding machine was manufactured by Enterprise Manufacturing Company in 1924. At some time between 1924 and 1955 it was sold to H. J. Heinz Company. In 1955 the Enterprise Manufacturing Company was merged into Silex Company where an Enterprise Division was maintained which continued manufacture of the same items produced by Enterprise prior to the merger. The Enterprise Division of Silex divided its operations into two lines: a commercial and industrial line, and a domestic line.

In 1956, Silex Company, pursuant to an agreement between Silex and U. S. Slicing Machine Company, Inc., (hereinafter U. S. Slicing), organized a corporation called Enterprise-1956-Incorporated to which it transferred most, but not all, of the assets of the commercial and industrial line of its Enterprise Division. Enterprise-1956 was planned as a temporary corporation and designed to continue in the operation of those portions of Silex's Enterprise Division which were transferred to it until its operations could be assumed by U. S. Slicing. U. S. Slicing did absorb all the assets and liabilities of Enterprise-1956, and in 1957 the interim corporation was dissolved. In 1970 U. S. Slicing changed its name to Berkel Incorporated. In the meantime, through a series of mergers, Silex became first, the Proctor-Silex Company, and later, SCM.

Ordinarily when one company sells or transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor simply by virtue of its succession to the transferor's property. In order to find that this general rule is not applicable and that

the transferee does acquire such liability, one of the following must be shown: (1) the purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered into to escape liability. See *Granthum v. Textile Machine Works,* 230 Pa. Superior Ct. 199, 326 A.2d 449 (1974). A fifth circumstance, sometimes included as an exception to the general rule, is where the transfer was without adequate consideration and provisions were not made for creditors of the transferor. See *Lopata v. Bemis Co., Inc.,* 383 F. Supp. 342 (E.D.Pa. 1974); *McKee v. Harris-Seybold Co., Division of Harris-Intertype Corp.,* 109 N.J. Super. 555, 264 A.2d 98 (1970); 19 Am. Jur. 2d *Corporations* §1546 (1965); 15 W. Fletcher, *Cyclopedia of Corporations* §7122 (Perm. ed. 1973).

SCM contends that the first exception is applicable to Berkel in the present case and that Berkel, through its predecessor U. S. Slicing, expressly and impliedly agreed to assume liability for damages such as those claimed by the present plaintiff. In support of this position SCM cites a section of the 1956 agreement between Silex (SCM's predecessor) and U. S. Slicing stating terms of the transfer of assets to Enterprise-1956. The following provision is found therein: "Enterprise-1956 agrees to assume all liabilities, obligations, contracts, orders for the purchase of material and warranties of [Silex] made in connection with the manufacture and sale of products assigned hereunder to Enterprise-1956 as part of the commercial and industrial line." On the basis of this provision, and proof that Berkel's predecessor did indeed take over the bulk of assets of the commercial and industrial line, which line had previously produced the subject food grinder, the lower court entered summary judgment in favor of SCM.

Before considering whether the provision is effective in transferring liability for personal injuries resulting from a defectively designed machine, it is important to recall those circumstances in which the entry of a summary judgment is appropriate. Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment. *Badami v. Dimson,* 226 Pa. Superior Ct. 75, 310 A.2d 298 (1973); *Prince v. Pavoni,* 225 Pa. Superior Ct. 286, 302 A.2d 452 (1973); *Kent v. Miller,* 222 Pa. Superior Ct. 390, 294 A.2d 821 (1972); 4 *Standard Pa. Practice* 205 (1955). Therefore in passing on the cross motions in the present case, there must be a determination that no issue of fact which could influence the outcome of the case is in dispute, and that the additional defendant SCM is entitled to judgment as a matter of law.

The lower court concluded that because the contract between SCM's and Berkel's predecessors effectively transferred the commercial and industrial line of Enterprise machines, the clause providing for the assumption of liabilities "in connection with the manufacture and sale of products assigned hereunder" operated to divest SCM of any liability for any product manufactured by that line. It must now be determined on the basis of this record that such a result was clearly and without doubt the intention of the parties to the contract and the entry of summary judgment dismissing SCM from the case was therefore proper. *See, e.g., Galvin v. Occidental Life Ins. Co.,* 206 Pa. Superior Ct. 61, 211 A.2d 120 (1965).

The plaintiff's complaint against Berkel was brought in trespass and assumpsit. In it the plaintiff alleges his right to recover for personal injuries is based on three theories: negligence, strict liability and implied warranty. Although SCM would ordinarily be liable on these claims as the successor of the company which manufactured the allegedly defective machine, it now seeks to prove that the clause by which Berkel's predecessor assumed "all liabilities, obligations, contracts, orders . . . and warranties . . . in connection with . . . products assigned hereunder" included liability for personal injuries in connection with a machine produced 22 years before the contract was formed.

In Pennsylvania, contractual limitation or elimination of liability for personal injuries, whether by assignment to another or by an exculpatory clause in the contract between the principal parties, is closely hedged with stringent standards. *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 192 A.2d 682 (1963). Although such contracts are not invalid per se, they must meet the following standards: (1) contracts providing for immunity from liability for negligence are to be construed strictly as they are not favorites of the law; (2) they must spell out the intention of the parties with the greatest of particularity, showing the intent to release "from liability 'beyond doubt by express stipulation' " keeping in mind that " '[n]o inference from words of general import can establish it' " [*Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Ass'n*, 423 Pa. 288, 292, 224 A.2d 620, 623 (1966), *quoting from Perry v. Payne*, 217 Pa. 252, 262, 66 A. 553, 557 (1907)]; (3) such contracts must be construed against the party seeking immunity from liability under their provision; (4) the burden of establishing the immunity is upon the party asserting it. For cases establishing and supporting these principles, see *Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Ass'n*, supra; *Galligan v. Arovitch,*

421 Pa. 301, 219 A.2d 463 (1966); *Dilks v. Flohr Chevrolet,* supra; *Warren City Lines, Inc. v. United Refining Co.,* 220 Pa. Superior Ct. 308, 287 A.2d 149 (1971); *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146 (3d Cir. 1974); *Neville Chemical Co. v. Union Carbide Corp.,* 294 F. Supp. 649 (W.D.Pa. 1968)', *aff'd in part and rev'd in part,* 422 F.2d 1205 (3d Cir.), *cert. denied,* 400 U.S. 826 (1970). It is clear that these principles apply to contracts wherein the immunity from liability is in the nature of an indemnity agreement as well as those wherein it is essentially an exculpatory clause. *See, e.g., Dilks v. Flohr Chevrolet,* supra; *Warren City Lines, Inc. v. United Refining Co.,* supra; *Gimbel Bros., Inc. v. William H. Vanderherchen, Inc.,* 468 F.2d 597 (3d Cir. 1972); *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205 (3d Cir. 1970); *Jamison v. Ellwood Consolidated Water Co.,* 420 F.2d 787 (3d Cir. 1970). Furthermore, the standards have been applied where a party to a contract has attempted to obtain a release from liability for claims of strict liability. *See Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* supra.

The disputed contractual clause in the present case lacks sufficient precision to meet the standards required to relieve SCM, as a matter of law, of liability for negligence or strict liability in connection with the production of the defective machine by its predecessor. The assumption of liability by Berkel's predecessor "in connection with the manufacture and sale of products assigned hereunder" leaves open the question whether the parties intended to transfer liability for those assets and items actually changing hands at that time, or whether liability was being assumed for the entire line of products, including a defective machine produced 22 years earlier and already sold. Where the intention of the contracting parties is not clear due to an ambiguous expression in the written instrument, the writing is construed most strongly against the party drafting it. *See, e.g., Egyptian*

*Sands Real Estate, Inc. v. Polony,* 222 Pa. Superior Ct. 315, 294 A.2d 799 (1972); *Galvin v. Occidental Life Insurance Co.,* supra. As the instrument was prepared by the legal counsel of SCM's predecessor, application of this rule would suggest that the more conservative interpretation, that liability was only transferred as to those assets immediately changing hands, would be read into the ambiguous expression.

In addition, it is uncertain whether the agreement "to assume all liabilities, obligations, contracts, orders for the purchase of material and warranties" is sufficiently specific to include a transfer of liability for negligence. In *Morton v. Ambridge Borough,* 375 Pa. 630, 101 A.2d 661 (1954), a reservation in a deed relieving the holder of an easement from any claims for damages arising from the construction, operation and maintenance of a system of pipes was held not to limit liability for negligence. The Court reasoned that because the instrument did not use the word "negligence," or a word of similar import, the language was not specific enough to eliminate liability in this respect. This principle has been followed in other decisions where it has been found that when the clause assigning liability is one of general import and fails to include any precise reference to negligence, it is not sufficient to transfer liability. *See, e.g., Gimbel Bros., Inc. v. William H. Vanderherchen, Inc.,* supra; *Neville Chemical Co. v. Union Carbide Corp.,* supra. In the present case, Berkel does not expressly assume SCM's liability for negligence or strict liability.[2] Because the

---

2. Strict liability for products sold, Restatement (Second) of Torts, §402A (1965), was first adopted in Pennsylvania in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). It is difficult to imagine that in 1956 the parties to this contract intended to include strict liability in the general language of the clause assigning liability when the concept was not even adopted by Pennsylvania law. *See Schwartz v. McGraw-Edison Co.,* 14 Cal. App. 3d 767, 92 Cal. Rptr. 776 (1971).

clause is one of general import, we cannot conclude with certainty that the parties intended an assignment of liability for personal injuries resulting from the defective machine.

The application of these rules of construction to the contract upon which SCM wishes to predicate its release from liability would be sufficient to find that the motion for summary judgment was erroneously granted. However, there is an additional reason for refusing this relief. The contract under consideration was between the two defendants to the plaintiff's cause of action. Any contract between the successor to Enterprise's liability and another party cannot affect that successor's original liability to the plaintiff. "The cause of action owned by the plaintiff is distinct from the cause of action arising out of the duty of the additional defendant to indemnify the defendant. Goodrich-Amram Rules of Civil Procedure, Comments on Rule 2252 (a)-9." *Carlin v. Pennsylvania Power and Light Co.*, 363 Pa. 543, 545, 70 A.2d 349, 351 (1950).

It is basic contract law that an initially obligated party cannot delegate his responsibility by agreement with a third person. "Neither the delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume the obligor's duty, extinguishes it or prevents recovery of damages from him if the duty is not performed." Restatement of Contracts, §160(4) (1932). *Cf. Saxe v. Feinstein,* 366 Pa. 473, 77 A.2d 419 (1951); *Beach v. Morris,* 12 S. & R. 16 (Pa. 1824); 3 S. Williston, *A Treatise on the Law of Contracts* §411 (3d ed. 1960). A party with an original obligation to another cannot divest himself of liability to that party merely by contracting with a third party to assume that liability.[3]

___

3. *See also,* Restatement of Contracts, §141(1) (1932), which reads as follows: "A creditor beneficiary who has an enforceable claim against the promisee can get judgment against either the promisee or the promisor or against each of them on their respective duties to him."

Similarly, in torts, although a person or organization can indemnify itself by agreement with another party against damages arising from its actions, it still remains liable to the injured person. The plaintiff's action is considered apart from the agreement between the transferor and transferee of liability. *See Carlin v. Pennsylvania Power and Light Co.*, supra; W. Prosser, *Law of Torts* 542, 544 (1971).

As a result of these considerations, we find that the additional defendant SCM did not prove, clearly and without doubt, that it has divested itself of all liability in the claim brought by the plaintiff John A. Husak, Jr. Accordingly, we find that the grant of summary judgment in SCM's favor was error.

Judgment in favor of SCM reversed.