**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LATONA TRUCKING, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.R. LINDE CONSTRUCTION CORP. | : | |
| | : | |
| Appellant | : | No. 534 MDA 2024 |

Appeal from the Judgment Entered April 3, 2024
In the Court of Common Pleas of Sullivan County
Civil Division at No: 2019-CV-225

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:          **FILED: OCTOBER 1, 2025**

Appellant, E.R. Linde Construction Corporation ("Linde"), appeals from the April 3, 2024, judgment of $227,444.96 in favor of Appellee, Latona Trucking, Inc. ("Latona").  The trial court granted summary judgment on the issue of liability in favor of Latona and subsequently conducted a non-jury trial on the issue of damages and attorney's fees.  Linde challenges the granting of summary judgment and the award of damages and attorney's fees.  Upon review, we affirm in part, vacate in part, and remand for further proceedings consistent with this memorandum.

In 2016, the Pennsylvania Department of Transportation ("PennDOT") contracted with D.A. Collins Construction Company ("Collins") for a publicly bid project known as the Pond Eddy Crossing Bridge Replacement Project ("the Project").  On June 17, 2016, Collins entered into a subcontractor agreement with Latona to "provide all labor, supervision, tools, equipment, materials,

services, and supplies" necessary to complete the Project. **See** Latona's Motion for Summary Judgment, 3/28/22, Exhibit 3, Subcontractor Agreement. The new bridge was constructed next to the existing bridge ("old bridge"), which remained in use during construction because it was the only access point for residents and other motorists.

On April 14, 2016, Linde provided a quote to Latona in which Linde would supply and deliver aggregate, *i.e.*, stone, gravel, and/or sand, to the Project. Latona accepted the quote. **See** Amended Complaint, 12/26/19, Exhibit A. Linde was responsible for picking up the aggregate at the quarry and transporting it to the dumpsite at the Project. **See** Plaintiff's Motion for Summary Judgment, Exhibit 7, Deposition of Karl Harkenreader, at 33-34. This duty included determining the route of travel for the trucks, ensuring that Linde's trucks were registered and arrived on time, and that its drivers had CDL licenses and obeyed the laws of the road, including any weight limits on roads or bridges. **See id.** at 34-35.

Thereafter, Linde entered into a subcontractor agreement with Scranton Craftsmen to "load, transport and offload designated materials" for the Project. **See** Plaintiff's Response to Defendant's Motion for Summary Judgment, 5/16/22, Exhibit 10, Subcontractor Hauling Agreement.

To summarize, the chain of contracts was as follows:



PennDOT
↓
Collins
↓
Latona
↓
Linde
↓
Scranton Craftsmen

On November 20, 2017, a driver employed by Scranton Craftsmen drove a truck exceeding the weight limit over the old bridge, causing extensive damage. Collins performed repairs to the old bridge at PennDOT's request. As a result, Collins backcharged Latona $75,913.74 for the cost of the repairs. On March 20, 2019, Latona sent a written demand to Linde to satisfy the claim.

Linde did not do so; therefore, on October 22, 2019, Latona initiated this breach of contract action against Linde to recover the amount it owed Collins for the cost of repairing the old bridge. In response to Linde's preliminary objections, Latona filed an amended complaint that included three claims: (1) breach of contract; (2) negligence; and (3) common law indemnification. Latona's breach of contract claim alleged that Linde breached its implied duty to perform in a workmanlike manner—specifically, Linde breached its duty when one of the Scranton Craftsmen drivers, who was subcontracted by Linde, negligently drove an overweight truck over the old bridge and caused extensive damage.

Following discovery, on March 28, 2022, Latona filed a motion for summary judgment asserting that both Linde's corporate designee and its own

expert admitted liability. Despite Latona's reliance on the admission of liability by Linde's expert, Latona filed a motion *in limine* to preclude the same expert from testifying at trial. ***See*** Latona's Motion in Limine, 5/3/22.

The trial court did not rule on Latona's motion *in limine*. Instead, it agreed that Linde's expert and corporate designee both admitted liability and granted summary judgment on liability in favor of Latona. ***See*** Opinion and Order, 8/1/22. On April 19, 2023, the court heard oral argument on Latona's motion *in limine*. Thereafter, the trial court granted Latona's motion *in limine* and precluded Linde's expert, John M. Wolfersberger, from testifying at the damages hearing. ***See*** Order, 4/24/23. The parties did not present evidence during the damages hearing. Instead, after oral argument, the trial court awarded Latona damages in the amount of $75,656.86. The trial court conducted a separate hearing regarding Latona's request for attorney's fees and awarded Latona an additional $151,788.10. ***See*** Order, 11/22/23.

Linde filed for post-trial relief, which was denied. A total judgment of $227,444.96 in favor of Latona was entered on April 3, 2024. This timely appeal followed. Both Linde and the trial court complied with Pa.R.A.P. 1925.[1] Linde raises the following issues for our review:

> A. Whether the April 3, 2024 judgment should be reversed because the trial court erred when it granted [Latona's] motion for summary judgment and denied [Linde's] motion?

---

[1] On March 14, 2025, this matter was briefly remanded to the trial court for preparation of a supplemental 1925(a) opinion. We retained jurisdiction. The trial court complied on April 15, 2025.

- 4 -

B. Whether the April 3, 2024 judgment should be reversed because [the] trial court erred when it granted [Latona's] motion *in limine* and precluded [Linde's] damages expert, John Wolfersberger?

C. Whether the April 3, 2024 judgment should be reversed because the trial court erred when it imposed damages against [Linde] on September 6, 2023.

D. Whether the April 3, 2024 judgment should be reversed because the trial court erred when, after a bench trial on November 14, 2023, it awarded [Latona] $151,788.10 in attorney's fees damages?

Appellant's Brief, at 7-8.

Linde challenges the trial court's decision to grant summary judgment as to liability. In reviewing the grant or denial of summary judgment, our standard of review is *de novo*, and our scope of review is plenary. *Khalil v. Williams*, 278 A.3d 859, 871 (Pa. 2022). Our Supreme Court has explained that

a trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. It is the moving party's burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. . . . An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

*Id.* (citations omitted).

Here, the trial court largely granted summary judgment because Linde's expert and corporate designee admitted liability. *See* Trial Court Opinion, 8/1/22, at 6-9. Additionally, the trial court found that Linde's duty to perform work in a workmanlike manner was non-delegable. *Id.* at 8. In so holding,

- 5 -

the trial court relied on **Husak v. Berkel, Inc.**, 341 A.2d 174 (Pa. Super. 1975) for the proposition that "an initially obligated party cannot delegate his responsibility by agreement with a third person." **Id.** at 179.

We affirm the order granting summary judgment to Latona on the ground that Linde had a non-delegable duty to perform work in a workmanlike manner. The material facts in this case are that Linde agreed to perform hauling services for Latona in a workmanlike manner; Linde subcontracted with Scranton Craftsmen for partial performance of that work; and the old bridge was damaged by a Scranton Craftsmen driver. There is no dispute of these material facts, and the trial court properly decided the question of liability as a matter of law.

Application of two principles support the entry of summary judgment. First, every contract for work or services contains a duty to perform skillfully and in a workmanlike manner as a matter of law, whether or not the contract expressly states such a duty. **See Huling v. Henderson**, 29 A. 276, 278 (Pa. 1894) ("One who undertakes any work impliedly assumes that he will do it with the ordinary skill and care, and becomes liable to make compensation for not doing so."); **Ferguson v. Burge**, 166 A.2d 288, 290 (Pa. Super. 1960) (recognizing duty to perform services in workmanlike manner under contract for installation of a well).

Second, the duty to perform work in a workmanlike manner is nondelegable, even if that work is later subcontracted out. **Husak**, **supra**. **Husak** involved a product liability claim against a successor corporation. The

- 6 -

plaintiff was injured during work when his hand was accidentally caught in a food grinding machine. *Id.* at 176. The plaintiff alleged that Enterprise, Berkel's predecessor, manufactured the defective machine and sold it to the plaintiff's employer. *Id.* The plaintiff sought to hold Berkel liable on a theory of implied warranty. *Id.* Berkel joined SCM Corporation as an additional defendant. *Id.*

The trial court granted summary judgment to SCM, but this Court reversed the entry of judgment. Of relevance to the present case, one of the reasons for reversing was our determination, based on review of a complex chain of merger agreements, that SCM was a successor to Enterprise's liability. We reasoned that any contract between the successor to Enterprise's liability, *i.e.*, SCM, and another party

> cannot affect that successor's original liability to the plaintiff. The cause of action owned by the plaintiff is distinct from the cause of action arising out of the duty of the additional defendant to indemnify the defendant.
>
> It is basic contract law that an initially obligated party cannot delegate his responsibility by agreement with a third person. "Neither the delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume the obligor's duty, extinguishes it or prevents recovery of damages from him if the duty is not performed." Restatement of Contracts § 160(4) (1932). A party with an original obligation to another cannot divest himself of liability to that party merely by contracting with a third party to assume that liability. *See also* Restatement of Contracts § 141(1) (1932).

*Id.* at 179 (some citations omitted).

In 1981, several years after **Husak's** issuance, the Restatement (Second) of Contracts was promulgated. The Restatement provision relied upon by the **Husak** court was renumbered, but the substance remained unchanged to the present:

(1)    An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise.

(2)    Unless otherwise agreed, a promise requires performance by a particular person only to the extent that the obligee has a substantial interest in having that person perform or control the acts promised.

(3)    **Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.**

Restatement (Second) of Contracts § 318 (1981) (emphasis added).

Courts have consistently applied this general rule to hold that contractors are liable for their subcontractors' breaches of their duty to perform work in a workmanlike manner. *See Klauder & Nunno Enterprises, Inc. v. Hereford Associates, Inc.*, 723 F. Supp. 336, 346 (E.D. Pa. 1989) ("[A]s contractor, K&N is liable for the breaches of its subcontractors . . . As Professor Corbin has observed, 'A duty can never be escaped by assignment or delegation.'") (citing 4 A. Corbin, Corbin on Contracts § 886, at 455 (1951); *Brooks v. Hayes*, 395 N.W.2d 167, 170 (Wis. 1986) (general contractor who hires independent contractor to perform services that general contractor was required to provide to owner is liable for

independent contractor's negligent construction based on the "hornbook principle of contract law [] that the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor to the obligee for breach of contract"); *Clear v. Patterson*, 459 P.2d 358, 361 (N.M. Ct. App. 1969) (general contractor was responsible to owner for its subcontractor's negligent construction of carwash based upon its nondelegable contractual duty to use reasonable skill in construction); *National Fire Ins. Co. of Hartford v. Westgate Const. Co.*, 227 F. Supp. 835, 838 (D. Del. 1964) (general contractor could be liable for its subcontractor's negligence in installing fireplace in home, which caused fire damage).

Applying these principles, we hold that Linde was liable to Latona because it could not delegate the duty it owed Latona to perform the work. Latona signed a subcontractor agreement with Collins in which Latona agreed to provide labor, supervision, equipment, materials, and services necessary to perform certain clearing, grubbing, and excavation work for the Project. *See* Amended Complaint, 12/26/19, ¶ 8. Latona then delegated partial performance of the work to Linde, *i.e.*, to provide materials and hauling services for the Project. *Id.* at ¶ 9. Linde then delegated partial performance of its duties to Scranton Craftsmen. Linde's delegation of performance did not discharge its duty to Latona to perform the work in a workmanlike manner.

When Scranton Craftsmen's driver damaged the old bridge, it breached the duty it owed to Linde to perform the work in a workmanlike manner.

Linde, in turn, breached the duty it owed to Latona to perform the work in a workmanlike manner. Accordingly, the trial court properly granted summary judgment on liability in favor of Latona.

Based on the foregoing, we need not consider whether the court properly granted summary judgment on the alternative ground that Linde's expert and corporate designee admitted liability. *See Commonwealth v. Singletary*, 803 A.2d 769, 772-73 (Pa. Super. 2002) ("[W]here the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relief upon by the lower court itself.").

In Linde's second argument, it contends that the trial court abused its discretion by granting Latona's motion *in limine* precluding its expert, Wolfersberger, from testifying regarding the amount of damage caused by the accident. *See* Appellant's Brief, at 65-71. Linde argues that the trial court "disregarded that Wolfersberger has substantial, technical, specialized knowledge" based on his "41 years [of] experience in investigating losses and estimating damage amounts." *Id.* at 66.

"A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *Yacoub v. Lehigh Valley Med. Assoc., P.C.*, 805 A.2d 579, 588 (Pa. Super. 2002). We review a trial court's decision granting a motion *in limine* using the same standard of review as applicable to the admission of evidence at trial. *Commonwealth v. Carter*, 320 A.3d 140, 147 (Pa. Super. 2024). Evidentiary rulings are within the sound discretion of the trial court.

***Kelly v. Thackray Crane Rental, Inc.***, 874 A.2d 649, 653 (Pa. Super. 2005).

We review the trial court's ruling on the admissibility of evidence for abuse of discretion:

> A finding of a trial court's abuse of discretion does not occur if we merely might have reached a different conclusion, but rather when the result is manifestly unreasonable, is based on partiality, prejudice, bias, or ill-will, or has such lack of support as to be clearly erroneous.

***Id.*** (citation omitted).

For expert testimony to be admitted at trial, the testimony must comply with the requirements of Pennsylvania Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c)     the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Furthermore, an expert's report and testimony must include the scientific authority on which the expert based his opinion:

> The exercise of scientific expertise requires inclusion of scientific authority and application of the authority to the specific facts at hand. Thus, the **minimal threshold** that expert testimony must meet to qualify as an expert opinion rather than merely an opinion expressed by an expert, is this: **the proffered testimony must point to, rely on or cite some scientific authority – whether facts, empirical studies, or the expert's own research – that**

- 11 -

**the expert has applied to the facts at hand and which supports the expert's ultimate conclusion**. When an expert opinion fails to include such authority, the trial court has no choice but to conclude that the expert opinion reflects nothing more than mere personal belief.

*Snizavich v. Rohm and Haas Co.*, 83 A.3d 191, 197 (Pa. Super. 2013).

Here, the trial court granted Latona's motion *in limine* to preclude Linde's expert Wolfersberger from testifying as to damages because he lacked "any specialized knowledge in the field of engineering" and failed to provide a damages valuation with "any calculation or explanation" as to how he arrived at his conclusion. Trial Court Supplemental Opinion, 4/15/25, at 3-4.

According to his curriculum vitae, Wolfersberger is a general adjuster with over 41 years of experience "as an insurance industry and claims professional." Latona's Motion in Limine, 5/3/22, Exhibit C. He has "[i]n-depth knowledge of claims adjusting and hands-on experience in investigations of a broad variety of property loss cases." *Id.* Such investigations included a church collapse and several arson cases. *Id.* Although there is nothing in his curriculum vitae to reflect that he has experience evaluating structural damage to a bridge, Wolfersberger does have specialized knowledge of evaluating property losses. Whether Wolfersberger could adjust the claim in this case goes to the weight of his testimony, not whether he may be admitted as an expert. On that basis, the trial court erred in precluding Appellant's expert report.

However, the trial court also found that Wolfersberger's expert report lacked a foundation on which his calculations were based. Wolfersberger's

report focused primarily on the cause of the damage. Wolfersberger claimed to rely upon an engineer's report[2], PennDOT invoices, photographs of the damage, and depositions of interested parties. *Id.*, Exhibit B at 2. He also reviewed the material, labor and equipment lists related to the repair work done. *Id.* at 6. He concluded that "every single item on these lists were [not] damages as a direct result of [Scranton's] vehicle passage over the bridge." *Id.* He stated that the evaluation of the claim was based "upon the conditions reported by the engineer, the photographs provided *and our knowledge of bridge construction*." *Id.* (emphasis added). The report did not explain what this "knowledge" was or how he obtained such "knowledge." Thus, his report lacked a foundation to support his conclusion that Scranton did not cause damage to the bridge.

Wolfersberger also claimed that the total value of the damage was $58,745.69 minus $10,848.37 in depreciation, for a net value of $47,897.32, approximately $28,000 less than the amount sought by Latona. His report, however, lacked any explanation as to how he arrived at this conclusion. His evaluation of damages consisted of three tables (material, equipment, and labor), each setting forth the description of the cost, quantity, unit price, tax, RCV, depreciation and ACV in separate columns. *Id.*, Exhibit D. There was no definition of RCV or ACV and no explanation as to how Wolfersberger

---

[2] Wolfsberger's report indicates that SAI Consulting Engineers completed an inspection of the bridge in November of 2017, and states that a copy of said report is attached. However, despite our best efforts, we cannot locate a copy of the engineer's report in the certified record.

arrived at the quantity, unit price, or any of the numbers for that matter. ***Id.*** Nor was there any explanation for how Wolfersberger determined the amount of depreciation. Wolfersberger thus failed to "point to, rely on or cite some scientific authority – whether facts, empirical studies, or the expert's own research – that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion." ***Snizavich***, ***supra***. Accordingly, we conclude that the trial court acted within its discretion by granting Latona's motion *in limine* to preclude Wolfersberger's expert testimony on damages on the basis that his report lacked the necessary foundation to support its conclusions.

Linde's third issue challenges the award of damages. It argues that the trial court erred when it awarded Latona damages absent an evidentiary hearing or jury trial. ***See*** Linde's Brief, at 71-75. We review an award of damages for abuse of discretion:

> The duty of assessing damages is within the province of the [trier of fact] and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.

***Ferrer v. Trustees of Univ. of Penn.***, 825 A.2d 591, 611 (Pa. 2002) (citations and quotation marks omitted).

The trial court initially denied summary judgment on damages, noting an issue of fact because Linde's expert opined that the cost to repair the old

- 14 -

bridge was lower than what Latona claimed. Subsequently, however, the trial court granted Latona's motion *in limine* and precluded Linde's expert from testifying at the damages hearing scheduled for May 24, 2023. **See** Order, 4/24/23. Linde then filed a motion for recusal, arguing that the trial court had knowledge of the parties' settlement discussions, and as such, "could unfairly influence [the trial court's] decision-making as the fact-finder on damages." Motion for Recusal, 4/24/23, ¶ 17. The trial court continued the damages hearing and scheduled oral argument on Linde's recusal motion for the date originally scheduled for the damages hearing, May 24, 2023.

During the May 24, 2023, hearing, issues arose regarding whether the question of damages and attorney's fees should be heard by a jury or a judge, as well as the reasonableness of the attorney's fees. Latona argued that a damages hearing was no longer necessary because Linde had "no ability to even present contrary evidence that the cost of the work that D.A. Collins back charged to Latona [was] unreasonable" because Linde's expert was precluded from testifying. N.T. Argument, 5/24/23, at 27. Thus, Latona argued that the issue of damages could be decided as a matter of law. The trial court agreed and entered an order awarding Latona $75,656.86 in damages, the amount pled in the amended complaint, without requiring Latona to present any testimony or evidence during an evidentiary hearing or jury trial. **See** Order, 9/11/23.

We are compelled to agree with Linde that the trial court abused its discretion when it awarded Latona damages without requiring it to prove the

amount to which it was entitled. It is well-settled that "the plaintiff in an action for breach of contract has the burden of proving damages resulting from the breach." ***Spang & Co. v. U.S. Steel Corp.***, 545 A.2d 861, 866 (Pa. 1988). The determination of damages is a factual question to be decided by the fact-finder:

> The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

***Judge Tech. Services, Inc. v. Clancy***, 813 A.2d 879, 885 (Pa. Super. 2002) (citation omitted). Even where liability is admitted or obtained via default judgment, the plaintiff must prove the damages that are being sought. ***See Derbyshire v. Jefferson Frankford Hosp.***, 329 A.3d 676, 684-85 (Pa. Super. 2024). Moreover, "a party seeking damages for breach of contract must be able to prove such damages with reasonable certainty." ***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59 (Pa. Super. 2016).

Although the trial court heard oral argument on the issue of damages, oral advocacy is not evidence, and Latona has the burden to present evidence that proved damages with reasonable certainty caused by Linde's breach. There was no testimony or evidence of damages introduced into the record

for a fact-finder to weigh and evaluate for credibility. Thus, the trial court abused its discretion when it awarded Latona damages without a trial on damages. We therefore remand for trial in which the parties shall present evidence of damages.

Lastly, Linde challenges the trial court's award of attorney's fees to Latona. Latona requested attorney's fees in its count for common law indemnification. Subsequently, in its motion for summary judgment, Latona requested attorney's fees under both common law indemnification, and under 42 Pa.C.S.A. § 2503 on the ground that Linde's conduct in defending the lawsuit was dilatory, vexatious, obdurate or in bad faith. Motion for Summary Judgment, 3/28/22, ¶¶ 79-89. Following a hearing, the trial court awarded Latona "the full amount of attorney's fees" of $151,788.10. *See* Order, 11/22/23. The order does not specify under which theory – common law indemnification or Section 2503 – attorney's fees were awarded, or how that amount was calculated. In its supplemental 1925(a) opinion, the trial court claimed that it awarded attorney's fees because Linde's "conduct throughout the process was dilatorious [sic] or vexatious," language that appears to have been borrowed from Section 2503(7). Trial Court Supplemental Opinion, 4/22/25, at 8.

On appeal, Linde claims that Latona is not entitled to attorney's fees under either theory. We review a trial court's award of attorney's fees under an abuse of discretion standard:

If the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the relevant statute providing for the award of attorney's fees, such award should not be disturbed on appeal.

***Thunberg v. Strause***, 682 A.2d 295, 299 (Pa. 1996). "Generally, Pennsylvania adheres to the 'American Rule,' which states that litigants are responsible for their own litigation costs and may not recover them from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." ***In re Farnese***, 17 A.3d 357, 370 (Pa. 2011) (citation and quotation marks omitted). There is no dispute that there was no clear agreement of indemnification between the parties, such as in a written contract. Rather, Latona claimed, and was awarded, attorney's fees under statutory authorization (42 Pa.C.S.A. § 2503).

Section 2503 authorizes a trial court to award reasonable attorney's fees in specific circumstances, including "counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of the matter." 42 Pa.C.S.A. § 2503(7). Application of Section 2503 only applies to conduct of a party "occurring after the lawsuit is initiated." ***Cher-Rob, Inc. v. Art Monument, Co.***, 594 A.2d 362, 333 (Pa. Super. 1991). Additionally, "[a]ny award of counsel fees pursuant to 42 Pa.C.S.A. § 2503(7) . . . must be supported by a trial court's specific finding of such conduct." ***Kulp v. Hrivnak***, 765 A.2d 796, 799 (Pa. Super. 2000).

Our Supreme Court has explained that conduct is considered dilatory within the meaning of Section 2503(7) "where the record demonstrates that

counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." ***In re Doyle***, 304 A.3d 1091, 1116 (Pa. 2023). "Obdurate conduct under this statutory provision is when counsel stubbornly persist in a course of wrongdoing during the course of litigation." ***Id.***

For example, in ***Kulp***, the parties entered into a settlement agreement, the terms of which were placed on record in open court. ***Kulp***, 765 A.2d at 797. One year later, plaintiffs filed a motion to compel enforcement of the agreement. ***Id.*** In its answer, defendants admitted to violating the agreement. ***Id.*** After a hearing, the trial court, in part, awarded plaintiffs attorney's fees for the costs incurred by filing the action to compel the agreement. ***Id.*** On appeal, we affirmed the award of attorney's fees because defendants "conduct could be considered dilatory in that it caused delay to [plaintiffs'] recovery of the money owed as part of the settlement agreement." ***Id.*** at 800.

In ***Morgan v. Morgan***, 193 A.3d 999 (Pa. Super. 2018), Husband petitioned to reduce his alimony obligation from $5,000 to $1,000. ***Morgan***, 193 A.3d at 1001. After a hearing, the trial court granted Husband's petition and reduced his alimony. ***Id.*** While the case was pending appeal, Wife learned that during the hearing, Husband produced "false documentation and testimony regarding his income, including two sets of false tax returns" to justify the reduction of alimony. ***Id.*** Despite acknowledging Husband's fraud, the trial court did not modify the order reducing Husband's alimony obligation

to $1,000. ***Id.*** at 1002. However, it did award Wife 75% of her legal fees from the time that she discovered Husband's fraud. ***Id.***

On appeal, this Court determined that the trial court erred in granting Husband's petition to reduce alimony and remanded to the trial court for reinstatement of the original alimony award of $5,000. ***Id.*** at 1008. We also concluded that Wife was entitled to 100% of her legal fees from the inception of the case because "Husband's fraudulent conduct is the sole cause of the ten years of legal proceedings that resulted in Wife's legal fees." ***Id.***

Attorney's fees also have been upheld where a litigant initiates a lawsuit that has no probability of success. For example, where an adopted child attempted to intervene in the distribution of the estate of her natural father despite knowing that an adopted child cannot inherit from its natural parents in Pennsylvania. ***See In re Estate of Liscio***, 638 A.2d 1019 (Pa. Super. 1994). The estate was awarded attorney's fees for the cost of defending "a frivolous and meritless claim." ***Id.*** at 1021. We upheld the award, concluding that the "claim had no reasonable possibility of success, coupled with her prolonging litigating and unnecessary delaying distribution of the estate, as well as costing the estate thousands of dollars in attorney['s] fees, we find that such conduct is the conduct envisioned by [Section] 2503[.]" ***Id.*** at 1022.

Likewise, in ***Scalia v. Erie Ins. Exchange***, 878 A.2d 114 (Pa. Super. 2005), plaintiffs filed a breach of contract action against Erie for denying their claim for insurance after a fire caused extensive damage to their home. ***Scalia***, 878 A.2d at 115. Erie denied the claim because it believed the fire

was arson set by or at the direction of plaintiffs. *Id.* Thereafter, plaintiffs stipulated that the fire was caused by arson but denied any involvement. *Id.* A jury found in favor of Erie. *Id.* The trial court awarded Erie attorney's fees because the "civil action was arbitrary, vexatious, and in bad faith." *Id.* at 115-16. We upheld the award, concluding that the plaintiffs conduct was obdurate because they "knew that they had no legal or factual grounds on which to base their suit and the only result of the suit was annoyance." *Id.* at 118-19.

Here, the trial court agreed with Latona that Linde's conduct in defending this action was dilatory because Linde knew that "it had no legal and/or factual defense as to liability and was responsible for at least [$47,897.32], the amount quoted by [Linde's] expert." Trial Court Supplemental Opinion, 4/22/25, at 6. It further explained:

> A simple look at the docket sheet illustrates [Linde's] dilatory behavior. [Linde] filed preliminary objections to Latona's original complaint. An amended complaint was filed. Preliminary objections were filed to the amended complaint with briefing and oral argument thereon. The[re] [were] numerous motions for continuance of trial that were filed by [Linde]. According to Latona, [Linde] did not produce discovery to Latona until after the discovery deadline and approximately seventeen (17) months after the discovery was served.
>
> * * * *
>
> The record reflects that [Linde] sought indemnification from Scranton Craftsmen . . . that was accepted [by Scranton]. As such, Scranton Craftsmen has essentially agreed to pay for any liability assessed against [Linde]. As a result, [the trial court] found [Linde's] position disingenuous and to the extent to which [Linde] has defended this matter a drain on judicial resources.

- 21 -

. . . [The trial court] held a bench trial and determined [Linde's] conduct throughout the process was dilatorious [sic] or vexatious. The [trial court] addressed the indemnification claim to illustrate [Linde's] further dilatorious [sic] and vexatious conduct in not resolving this matter despite having Scranton Craftsmen indemnify [Linde] for the damages.

*Id.* at 6-8. In sum, the trial court awarded Latona attorney's fees because (1) Linde filed preliminary objections to Latona's complaint and amended complaint; (2) Linde requested continuances of trial; (3) Linde was indemnified by Scranton; and (4) Linde violated discovery timelines.

We are not in a position to determine whether the award was justified because the trial court in many respects gave non-specific, conclusory allegations of Linde's "dilatory" conduct and not all conduct cited may have been dilatory. For instance, the filing of preliminary objections and continuances are allowed under our rules of civil procedure. The trial court does not explain how Linde's entire defense was dilatory, vexatious or obdurate. Nor did it find that Linde's filings delayed the matter or were, for instance, the product of wrongdoing or fraud. *See Kulp*, *Morgan*, *Liscio*, and *Scalia*, *supra*.

To the extent that the trial court's award of attorney's fees is based on its finding that Linde was indemnified by Scranton, and thus should not have defended the action, there is no evidence of record that indemnification occurred, and if so, when. The trial court's finding is based on a February 17, 2021, letter from Latona's counsel to Linde's counsel regarding Linde's response to Latona's interrogatories, which reads:

[O]n Page 8 of [Linde's] Claim Notes, it states that Scranton Craftsmen has "confirmed that it was their driver and vehicle that caused the event." Further, on page 18 of the Claim Notes, it indicates that [Linde's] carrier "confirmed that the vehicle was one of Scranton's and not a vehicle of [Linde]." . . . It also appears that Scranton Craftsmen "accepted the tender of [Linde]," per page 18 of the Claim's Notes.

***See*** Latona's Motion for Summary Judgment, 3/28/22, Exhibit 11. The trial court's reliance on this letter is misplaced. The letter does not specifically state that Linde was indemnified by Scranton. Moreover, it appears that Latona's claim that Linde was indemnified came from Linde's "claim note." We could not locate the "claim note" in the certified record, nor any evidence or testimony that Scranton indemnified Linde.

The trial court also did not explain how Latona was delayed by Linde not producing discovery "until after the deadline and approximately seventeen (17) months after the discovery was served." Trial Court Supplemental Opinion, 4/22/25, at 7. This would seem to be a pertinent inquiry since Latona never filed a motion to compel discovery or a request for sanctions pursuant to Pa.R.Civ.P. 4019.[3] We certainly do not condone the late filing of discovery responses, but an award under 2503(7) must find that the failure to respond, absent any justification, was the product of dilatory, obdurate or vexatious conduct.

Lastly, we note that Latona's counsel testified that its request for fees included work that was completed *before* the filing of the complaint in this

---

[3] Rule 4019 provides specific instances where the trial court has the authority to impose sanctions, including attorney's fees, for discovery issues.

matter. N.T. Hearing, 11/14/23, at 102. Section 2503 does not permit a court to award fees for conduct that occurred prior to the initiation of the lawsuit. *See Cher-Rob, Inc.*, *supra.* To the extent the award under 2503(7) included fees prior to initiation of suit, this constituted error by the court.

Accordingly, we are compelled to conclude that the trial court abused its discretion when it awarded Latona all of its attorney's fees pursuant to 42 Pa.C.S.A. § 2503(7). The record is not sufficient for us to determine whether Linde's conduct in all respects criticized by the trial court was dilatory, obdurate or vexatious, *i.e.*, filing pleadings that are permitted to be filed in a lawsuit, without more, cannot rise to the level of sanctionable conduct envisioned by Section 2503(7).

For these reasons, we affirm the August 1, 2022, order granting summary judgment as to liability, and the April 20, 2023, order granting Latona's motion *in limine* to exclude Linde's testimony regarding damages. We vacate the September 11, 2023, order awarding damages and remand for trial on the issue of damages. We also vacate the November 22, 2023, order awarding attorney's fees without prejudice to Latona to renew its motion to award fees under 2503(7). If it does so, the trial court shall provide specific findings to justify the instances of dilatory, obdurate or vexatious conduct committed by Linde, and further, only award fees that bear upon the improper conduct found.

Judgment affirmed in part, vacated in part, and remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2025